UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ANTHONY C. QUARLESS,

                Plaintiff,

- against -

BROOKLYN BOTANIC GARDEN CORP.,
SCOT D. MEDBURY, as President and Chief Executive
Officer; and ROCHELLE CABINESS, as Director of
Human Resources, each being sued individually and
in their official capacities as employees of defendant
BROOKLYN BOTANIC GARDEN CORP.,

                Defendants.
----------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-CV-05684 (CBA) (RER)

AMON, Chief United States District Judge.

Plaintiff Anthony C. Quarless brings this action against the above-captioned defendants pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e et seq., 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-107. Quarless alleges that he was terminated by his former employer, the Brooklyn Botanic Garden ("BBG"), in retaliation for complaining about discrimination at BBG and for filing complaints of racial discrimination with the Equal Employment Opportunity Commission ("EEOC"). The claims in the complaint of race discrimination and hostile work environment were withdrawn, as well as all claims against defendants Frank Montes and Patrick Cullina. (DE #29.) The remaining defendants move for summary judgment on the outstanding retaliation claims. For the reasons set forth below, the defendants' motion for summary judgment is granted.

1

## BACKGROUND

### I. Factual Background

Quarless, an African-American male, began working at BBG, a 52-acre museum of plant collections and specialty gardens, in or around June 1982 as a seasonal guard. (Compl. ¶¶ 9-10; Defs. R. 56.1 ¶¶ 1, 4.) Over the course of his employment, he was promoted on at least four occasions, culminating in his promotion in 2000 to Director of Security, a position he held until his termination in July 2010. (Defs. R. 56.1 ¶¶ 5-6; Quarless Dep. at 103-04.)

Quarless asserts that over his 28-year career at BBG, he repeatedly complained to BBG management, the Director of Human Resources Rochelle Cabiness, and ultimately the EEOC about race and gender discrimination that he experienced or witnessed at BBG. These complaints began in 1985, around the time Quarless was promoted to supervisor, with Quarless's complaint to the BBG president that the security director at the time was discriminating against him and another black supervisor by not issuing them a supervisor's uniform. Quarless was subsequently issued the proper uniform. (Quarless Dep. at 198-200; Defs. R. 56.1 ¶ 23.) More than a decade later, in 1997, after he had been promoted to a senior supervisor position, Quarless complained to Cabiness that the then security director was discriminating against minority members of the security department. The discriminatory behavior ceased following his complaint. (Quarless Dep. at 201-02; Defs. R. 56.1 ¶ 24.)

Quarless's complaints and alleged experiences with discrimination persisted after he was promoted to Director of Security in 2000. According to Quarless, in 2004, Keith Stubblefield, a former Vice President of Finance and the manager who oversaw human resources, verbally reprimanded him after a white female employee complained that Quarless had verbally assaulted her, even though an investigation into the allegations had not yet been conducted. Quarless

2

states that the female employee eventually confessed that she fabricated the story but was never reprimanded and that he never received an apology. (Sanders Decl., Ex. 10 at 4; Quarless Dep. at 203-05; Defs. R. 56.1 ¶ 25.)

Two years later, in August 2006, Quarless again complained to Cabiness, describing in an email what he perceived to be "systemic discriminatory practices within the institution." (Quarless Dep. at 196-97; 206-210; Defs. R. 56.1 ¶ 27.) Quarless referenced two events that occurred that year: (1) an incident in which a Caucasian teenage intern allegedly caught stealing coins from a fountain was not arrested; and (2) an episode where a Caucasian BBG employee "disrespected" Quarless by not promptly displaying his ID badge after being told to do so, but was never disciplined. (Quarless Dep. at 196, 206-09; Defs. R. 56.1 ¶ 26.) Quarless testified that a week or two after he sent the email, Mr. Stubblefield brought Quarless and Cabiness to his office to discuss the email. According to Quarless, Cabiness stated that she was "very angry as a black woman to even have received the e-mail." (Quarless Dep. at 213, 219.) Quarless testified that Cabiness refused to investigate his complaints of discrimination and that when he raised this failure late in 2006 with Mr. Stubblefield he was told "that I need to stop complaining about Rochelle Cabiness or I'm going to regret it." (Id. at 220, 273-74.)

Quarless's next complaint came in the April 2009 self-evaluation that he provided to his then supervisor, Frank Montez, in which he reiterated many of the concerns about discrimination at BBG that he had raised in previous complaints. (Defs. R. 56.1 ¶ 28; see Quarless Dep. at 79-80, 221.) He alleges that he subsequently received a poor annual performance evaluation blaming him for complaints of discrimination filed by the security department staff to the union, District Council 37. (Sanders Decl., Ex. 10 at 22.)

On May 27, 2009, shortly after receiving this negative evaluation, Quarless filed a charge with the EEOC. (Sanders Decl. Ex. 9; Defs. R. 56.1 ¶ 29.) BBG received notice that he filed this charge in June 2009. (Defs. R. 56.1 ¶ 30; Cabiness Aff. ¶ 16.) Right after he filed the complaint, Quarless alleges, someone at BBG tampered with his personal computer account, deleting emails and other files relating to his complaints of discrimination and past investigations. (Sanders Decl., Ex. 10 at 22.)

Quarless supplemented and updated his EEOC charge several times. On October 28, 2009, referencing his pending charge, Quarless submitted to the EEOC a narrative and timeline describing his "ongoing retaliation for complaining when [he] was treated unfairly" at BBG. (Sanders Decl., Ex. 10.) Quarless again supplemented his administrative complaint on January 29, 2010, alleging that BBG was paying Glenn Curtis, the Assistant Director of Security, below the advertised rate. (Sanders Decl., Ex. 11.) On April 20, 2010, Quarless updated his EEOC charge to include a letter sent to District Council 37, signed by all of the BBG security staff, alleging racial discrimination at BBG. (Sanders Decl., Ex. 12.)

Around the same time that Quarless filed his initial complaint with the EEOC, BBG began implementing a number of cost-cutting measures. According to defendants, these measures were necessitated by BBG's poor financial condition, a state of affairs which began in the latter part of 2008. (Defs. R. 56.1 ¶ 7; Cabiness Aff. ¶ 6.) The vast majority of employees did not receive any salary increase that would otherwise have become effective in 2009 or 2010. (Defs. R. 56.1 ¶ 8; Cabiness Aff. ¶ 6.) In addition, in 2009, BBG furloughed all employees for five days and eliminated nine positions. (Defs. R. 56.1 ¶¶ 9-10; Cabiness Aff. ¶ 7.) Defendants claim that because BBG's financial condition did not improve in 2010, it was forced to eliminate

eight more positions and reduce employee salaries. (Defs. R. 56.1 ¶¶ 11-12, 17-18; Cabiness Aff. ¶¶ 8-11.)

On or about July 13, 2010, Quarless was visited by Richard Coleman, the Vice President of Facilities, Planning, Construction and Management, and Mark Gasparini, the Vice President of Finance and Chief Financial Officer, who informed him that BBG was terminating him as part of a reduction in force. (Quarless Dep. at 55, 104; Gasparini Aff. ¶ 9; Sanders Decl., Ex. 13.) According to defendants, Quarless was terminated because the Director of Security position was one of the eight selected for elimination as part of BBG's cost-cutting efforts. (Defs. R. 56.1 ¶¶ 13, 15, 17; Cabiness Aff. ¶¶ 10-11.) Quarless's position, BBG states, was chosen for elimination because the Assistant Director of Security could assume the duties previously held by the Director of Security. (Defs. R. 56.1 ¶¶ 14-15; Cabiness Aff. ¶¶ 10-11.) As both parties admit, Quarless's position was not filled, and instead Glen Curtis, the Assistant Director of Security, assumed the duties previously performed by Quarless. (Defs. R. 56.1 ¶¶ 21-22; Pl. R. 56.1 ¶¶ 21-22.) Curtis did not officially become the Director of Security, but he managed the department under the direct supervision of Gasparini. (Cabiness Dep. at 256.)

After Coleman and Gasparini informed Quarless that he was terminated, they handed him a document and told him to vacate the premises immediately through a side door without giving him a few minutes to gather his personal belongings. (Quarless Dep. at 104, 107; Sanders Decl., Ex. 13.) Quarless initially protested, but then left his belongings in his office and exited the building through the front door. (Quarless Dep. at 108-09.) Quarless then contacted the New York City Police Department and returned the next day with a police escort to collect his belongings. (Id. at 109.)

5

On March 2, 2011, Quarless wrote to Jean Mulligan, an EEOC Investigator, informing her that in light of his termination, he was filing a second charge against BBG for unlawful retaliation. (Sanders Decl., Ex. 13.)

## II. Procedural History

The EEOC issued Quarless a right-to-sue letter on August 18, 2011. (Sanders Decl., Ex. 9.) Quarless subsequently filed this action on November 21, 2011, asserting claims of race discrimination, hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL. During a pre-motion conference held on November 16, 2012, Quarless agreed to withdraw all claims related to race discrimination and hostile work environment, leaving only his retaliation claims against defendants. (DE dated 11/16/2012.) Quarless also agreed to dismiss defendants Patrick Cullina and Frank Montez from this case. (DE #29; #30.)

Arguing that Quarless's termination was in no way retaliatory, the remaining defendants filed the instant motion for summary judgment on January 24, 2013, seeking to dismiss Quarless's outstanding retaliation claims. (DE #21.) Specifically, defendants claim that (1) Quarless has not established a prima facie case of retaliation; (2) even assuming that he has established a prima facie case, that he has failed to adduce evidence sufficient to carry his burden of proving that BBG's asserted reason for terminating him was a pretext for retaliation; and (3) that defendant Cabiness cannot be held individually liable.

# DISCUSSION

## I. Summary Judgment on Quarless's Federal and State Retaliation Claims

### A. Standard of Review

Summary judgment is appropriate when the pleadings and evidence that would be admissible at trial show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008). This Court's function is not to resolve disputed issues of fact but "to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

The moving party carries the initial burden of demonstrating the absence of a material factual question. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining whether this demonstration has been made, this Court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted). Nevertheless, the non-moving party cannot rest merely on speculations, conjecture or denials but "must set forth specific facts showing that there is a genuine issue for trial." See Irizarry v. Catsimatidis, 722 F.3d 99, 103 n.2 (2d Cir. 2013) (quoting Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008)). A genuine issue exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

In retaliation cases, courts must be mindful that a victim of retaliation is "seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative

weight of circumstantial evidence." See Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) (discussing discrimination cases). Nonetheless, as the Second Circuit has made clear, "summary judgment remains available for the dismissal of [retaliation] claims in cases lacking genuine issues of material fact." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (internal quotation marks omitted); see also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

### B. Quarless's Title VII and § 1981 Retaliation Claims

Quarless alleges that BBG terminated him in retaliation for making various complaints of race and gender discrimination in the workplace. Quarless's Title VII and § 1981 claims are analyzed under the same burden-shifting framework.[1] See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010); Bowen-Hooks v. City of New York, --- F. Supp. 2d ---, 2014 WL 1330941, at *16 (E.D.N.Y. 2014). Title VII, "prohibits an employer from taking 'materially adverse' action against an employee because the employee opposed conduct that Title VII forbids or the employee otherwise engaged in protected activity." Tepperwein v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 567 (2d Cir. 2011). § 1981 guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens and "encompasses retaliation claims" as well as discrimination claims. CBOCS West, Inc. v. Humphries, 553 U.S. 442, 451 (2008).

*1. Title VII and § 1981 Retaliation Framework*

Retaliation claims under Title VII and § 1981 are evaluated using the McDonnell Douglas three-step burden-shifting framework. See Jute v. Hamilton Sundstrand Corp., 420 F.3d

---

[1] As discussed below, although the same burden-shifting framework is utilized in analyzing both Title VII and § 1981 claims, after University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013) the causation standard used in analyzing § 1981 and Title VII claims may differ.

166, 173 (2d Cir. 2005); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). First, the plaintiff must establish a prima facie case of retaliation by demonstrating: "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Hicks, 593 F.3d at 164 (quoting Jute, 420 F.3d at 173). The plaintiff's burden at this stage is "de minimis," and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." Jute, 420 F.3d at 173.

If the plaintiff is able to establish a prima facie case, a "presumption of retaliation arises," and the burden then shifts to the employer to proffer a legitimate, non-retaliatory reason for the adverse employment action. Id. Once the employer offers such proof, "the presumption of retaliation dissipates," and the burden shifts back to the employee show that retaliation was a cause of the adverse employment action. Id.; Hicks, 593 F.3d at 164-65. Prior to University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013), a plaintiff could satisfy the causation requirement at this stage by showing that "retaliation was a substantial reason for the adverse employment action." Jute, 420 F.3d at 173.

In Nassar the Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation." 133 S. Ct. at 2533. This causation standard requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id. Although prior to Nassar § 1981 and Title VII cases were decided under the same standard, e.g. Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004), following Nassar the causation standards in § 1981 and Title VII retaliation claims may differ. However, we need not decide whether Nassar's but-for

9

requirement applies to § 1981 claims, or if §1981 cases are still governed by the motivating factor test, because we hold that defendants are entitled to summary judgment under both the but-for and the motivating factor causation standards.

*2. Quarless's Prima Facie Case of Retaliation*

Defendants concede for purposes of this motion that Quarless has established the first three elements of his prima facie case. (Defs. Mem. at 8.) They contend that Quarless cannot establish the fourth element, a causal connection between his prior complaints of race and gender discrimination and his termination, because there is no evidence of direct retaliatory animus and because there is insufficient indirect evidence to establish the requisite causal connection.

A plaintiff can prove a causal connection between the protected activity and the adverse employment action "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." Hicks, 593 F.3d at 170 (internal quotation marks and citations omitted). As defendants assert, and Quarless does not contradict, the record before this Court is devoid of any direct evidence of retaliatory animus. Instead, Quarless relies on the close temporal proximity between Quarless's April 20, 2010 update to his EEOC charge and his termination on July 13, 2010. (Pl. Mem. at 11-12.)

"Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection" to make out a prima facie case of retaliation. Kaytor v. Electric Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010); see also Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 845 (2d Cir. 2013) (holding that Nassar did not alter the ability to demonstrate causation through

10

reliance on temporal proximity). For "mere temporal proximity" to suffice, however, it "must be very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (internal quotation marks omitted). Indeed, although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001), courts in this circuit "have consistently held that a passage of more than two or three months between the protected activity and the adverse employment action does not allow for an inference of causation," Murray v. Visiting Nurse Servs., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007); see also Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011); Chin-McKenzie v. Continuum Health Partners, 876 F. Supp. 2d 270, 287 (S.D.N.Y. 2012) (collecting cases). A seven or eight month gap between a plaintiff's protected activity and the adverse action can support an inference of causation where other circumstances bolster the otherwise attenuated connection between the protected activity and the retaliatory action. See Summa v. Hofstra Univ., 708 F.3d 115, 128-29 (2d Cir. 2013) (holding a seven month period not "prohibitively remote").

Quarless asserts that this Court can infer causation here because his last pre-termination submission to the EEOC occurred on April 20, 2010, less than three months before his termination on July 13, 2010. Defendants maintain that during Quarless's employment they were aware of only the initial May 2009 EEOC charge, which the EEOC provided BBG notice of in June 2009, and were not aware of any of Quarless's additional submissions. Defendants further argue that Quarless presents no evidence that defeats that assertion. (Defs. Reply at 7-8; Defs. R. 56.1 ¶ 30.)

Although the record indicates that several individuals at BBG were aware of Quarless's initial EEOC charge, no evidence indicates that anyone at BBG had notice that Quarless sent additional letters to the EEOC. (Medbury Dep. at 98; Curtis Dep. at 37-38; Cabiness Dep. at 248; Gasparini Dep. at 15-16.) Indeed, at oral argument, plaintiff conceded that there was no evidence that defendants received notice of the later filed complaints. (Oral Arg. Tr. at 29-30.)[2] Even under its minimal burden at the prima facie stage, plaintiff must present "admissible evidence [that] would be sufficient to permit a rational finder of fact to infer a retaliatory motive." Jute, 420 F.3d at 173. In deciding whether plaintiff has met its burden, this Court must "carefully distinguish between evidence that allows for a reasonable inference of retaliation and evidence that gives rise to mere speculation and conjecture." Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999).

A conclusion that anyone at BBG was aware of plaintiff's additional letters to the EEOC would be "mere speculation" and such impermissible speculation cannot support finding a causal connection. Because there is no evidence that anyone at BBG received notice of Quarless's supplemental letters, this Court uses the June 2009 date on which defendants received notice of plaintiff's EEOC charge as the operative date in determining whether temporal proximity could support an inference of retaliation. Using the June 2009 date, there are nearly 13 months between plaintiff's protected activity and the alleged retaliatory action. Such a significant gap is insufficient to support an inference of retaliatory intent.

Accordingly, this Court finds that plaintiff has failed to establish a prima facie case of retaliation.

---

[2] "Q: "Is there any evidence in the record that [defendants] knew about the later letter[s] that [plaintiff] filed [with the EEOC]?"
A: "No, there is no evidence on specific dates."

### 3. BBG's Nondiscriminatory Reason for the Termination

Even assuming Quarless has come forward with sufficient evidence to establish a <u>prima facie</u> case of retaliation, defendants have in turn identified a legitimate, nondiscriminatory reason for his termination, specifically, BBG's deteriorating financial condition. See <u>Leibowitz v. Cornell Univ.</u>, 584 F.3d 487, 503-04 (2d Cir. 2009); <u>Moccio v. Cornell Univ.</u>, 889 F. Supp. 2d 539, 591 (S.D.N.Y. 2012). Defendants argue that BBG's precarious financial state prompted a number of cost-cutting measures including a reduction in workforce that eventually included the elimination of Quarless's position and his concomitant termination.

To substantiate their claims, the defendants have offered affidavits and deposition testimony illustrating BBG's financial condition. Cabiness stated in her affidavit that beginning in the latter part of 2008, BBG's financial condition worsened to the point that BBG started to contemplate layoffs and was unable to provide any scheduled salary increases for the vast majority of employees in 2009 or 2010. (Cabiness Aff. ¶ 6; Gasparini Aff. ¶¶ 2-3.) As part of its cost cutting efforts, in 2009 BBG eliminated nine positions, terminated the employees then filling those positions, and furloughed all employees for five days. (Cabiness Aff. ¶ 7; Gasparini Aff. ¶ 4.) With New York City budget cuts and a depressed economy adding to BBG's economic woes, BBG was forced to eliminate one additional position in January 2010, and reduced employees' salaries. (Cabiness Aff. ¶¶ 8-10, 12; Gasparini Aff. ¶¶ 5-7.)

In the early part of 2010, BBG began to contemplate eliminating additional positions, (Cabiness Aff. ¶ 10; Gasparini Aff. ¶ 7), and effective July 2010, BBG terminated seven additional employees (Cabiness Aff. ¶ 11; Gasparini Aff. ¶ 9). As part of this reduction, Quarless's position was eliminated and he was one of the seven employees fired. (<u>Id.</u>) BBG asserts that after analyzing what positions it could eliminate and have existing employees

perform those functions, it decided to eliminate Quarless's position because his job functions could be split between the vice president and the assistant director of security. (Medbury Dep. at 97-98; Gasparini Aff. ¶¶ 7-8; Cabiness Aff. ¶ 11.) Indeed, after his termination, Quarless was not replaced, rather Glen Curtis, the Assistant Director of Security, assumed the basic functions of the eliminated position (Cabiness Aff. ¶ 15; Gasparini Aff. ¶ 10), a fact which Quarless does not contest (Pl. R. 56.1 ¶¶ 21-22).

In total, BBG eliminated seventeen positions and instituted various cost-cutting measures in 2009 and 2010. (Cabiness Aff. ¶¶ 6-8, 10-13; Gasparini Aff. ¶¶ 2-8; Medbury Dep. at 22-24.) Defendants' met their burden of establishing a non-retaliatory reason for terminating Quarless. See Williams v. Home Depot U.S.A., Inc., 02-Civ.-5353, 2005 WL 2429421, at *13 (S.D.N.Y. Sept. 30, 2005) aff'd, 196 F. App'x 47 (2d Cir. 2006) (In the Title VII context, "[a]n affidavit of the person responsible for implementing an employer's reduction in force articulating a reasonable explanation for the decision satisfies a defendant's burden at this stage of the McDonnell Douglas analysis."); see also Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1226 (2d Cir. 1994) (In the ADEA context, the defendant "presented affidavits of its various officers to show that at the time it discharged Gallo the company was in a business downturn and that a reduction-in-force was necessary to meet its budgetary goals. This evidence [was] enough to rebut the presumption of age discrimination that Gallo's prima facie case established.").

In addition to supplying affidavits and deposition testimony supporting their assertions, the defendants have also pointed out several instances where Quarless admits to knowing BBG was struggling financially. At his deposition, Quarless admitted that he was aware that BBG was facing financial difficulties in 2009. (Quarless Dep. 54-55.) He also acknowledged that there

14

were furloughs in 2009, and that a number of BBG employees were laid off in 2009 and 2010. (Id. at 54-56.) These admissions further bolster the defendants' argument that BBG was financially unsound.

Accordingly, this Court finds that the defendants have submitted evidence which "taken as true, would permit the conclusion that there was a non[-retaliatory] reason" for Quarless's termination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).

### 4. Evidence of Pretext

Because defendants have met their burden of demonstrating a legitimate, non-retaliatory reason terminating Quarless the "presumption of retaliation arising from the establishment of the prima facie case drops from the picture." Kwan, 727 F.3d at 845. To avoid summary judgment Quarless must come forward with evidence sufficient to create a genuine issue of material fact such that a reasonable fact-finder could conclude that but-for his complaints to the EEOC he would not have been terminated. See Nassar, 133 S. Ct. at 2533.[3] "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action" such that a jury could conclude that defendants' articulated non-retaliatory reason is mere pretext and that retaliation was a but-for cause of plaintiff's termination. Kwan, 727 F.3d at 846.

Quarless attempts to demonstrate that defendants' articulated non-retaliatory rational is mere pretext by relying on what he considers to be inconsistencies in testimony about the

---

[3] Although this Court analyzes this prong of the burden shifting test under the "but-for" causation standard applicable to Title VII retaliation claims, it is at least unclear whether § 1981 retaliation claims should be analyzed under the more lenient motivating factor test. Under that test plaintiff need only demonstrate that the articulated reason was "not the only reason[]" for the retaliatory action "and that the prohibited factor was at least one of the motivating factors." Garcia v. Hartford Police Dept., 706 F.3d 120, 127 (2d Cir. 2013). For the reasons articulated, this Court finds that even if § 1981 employs the motivating factor causation standard, Quarless still failed to carry his burden at this stage of the burden shifting test.

15

decision to fire him and a perceived lack of documentary evidence supporting the existence of a formal reduction in force plan. (Pl. Mem. at 11-12.) Any alleged inconsistencies are minor, and defendants have provided ample testimony that supports the assertion that BBG terminated Quarless for a legitimate non-retaliatory reason. Defendants were under no obligation to rely on the specific documentary evidence Quarless alleges they failed to provide.

For instance, Gasparini testified that BBG sought to terminate employees in middle management who occupied positions "where there would be a strong enough employees' base below that could handle the job and continue operating the department" and that Quarless was terminated because "we felt there was management level there to support the department." (Gasparini Dep. at 10, 15.) In an attempt to call this testimony into question, Quarless alleges that Gasparini submitted an affidavit in support of the motion for summary judgment that contradicted testimony that he gave at deposition. At deposition, Gasparini testified that he spoke with Cabiness before implementing a reduction in force plan. (Gasparini Dep. at 16.) In his affidavit, Gasparini alleged that Cabiness "did not participate in the selection of positions to be eliminated." (Gasparini Aff. ¶ 8.) Quarless argues that these two statements are inconsistent. However, these statements are entirely consistent; as defendants pointed out at oral argument, Gasparini did discuss with Cabiness the prospect of financial layoffs, but Cabiness did not have any role in the selection of who would be laid off. (See Oral Arg. Tr. at 12-13.)

Quarless points to other minor inconsistencies that similarly carry little, if any, persuasive value. He attaches significance to the fact that a list of terminated employees that BBG submitted to the EEOC differed from an earlier prepared list of employees that BBG considered terminating. (Pl. Mem. at 9-10.)[4] At oral argument, it became clear that the earlier prepared list of proposed terminations was created by a former BBG employee to determine the financial

---

[4] Quarless was included on both lists. (Sanders Decl. Exs. 5, 14.)

16

impact of eliminating certain positions and the second list was a list of employees actually terminated. (Oral Arg. Tr. at 18-19.) The fact that BBG's economic analysis of employees it considered terminating and BBG's list of actually terminated employees is not co-extensive is of little consequence. (Sanders Decl. Exs. 5, 14.)[5] Certainly, the discrepancy between the list is not evidence that undermines the undisputed claim that BBG was suffering financial difficulties. Nor is it any evidence that BBG in fact retaliated against Quarless by terminating his employment.

Quarless also notes the absence of "business records" supporting BBG's claims that its financial condition necessitated various lay-offs, furloughs, and hiring and salary freezes. (See Pl. Mem. at 11-12; Pl. R. 56.1 ¶¶ 8-19.) There is, however, uncontroverted evidence that BBG was suffering financial difficulties and that Quarless was terminated as part of a larger reduction in workforce. Defendants' established a non-retaliatory reason for terminating Quarless. See Williams, 2005 WL 2429421 at *13; Gallo, 22 F.3d at 1226; O'Sullivan v. New York Times, 37 F. Supp. 2d 307, 316 (S.D.N.Y. 1999) ("The defendant has clearly met its burden in rebutting plaintiffs' prima facie case by offering numerous affidavits and depositions demonstrating the non-discriminatory basis for its decisions to discharge plaintiffs."). In fact, another judge in this district relied on almost identical evidence in another suit against BBG in concluding that BBG

---

[5] Pointing to another supposed inconsistency, Quarless argues that in the past BBG expressed reservations about Glenn Curtis, the employee who replaced Quarless, but now states that it terminated Quarless in part because it believed Curtis could assume Quarless's duties. (Pl. Mem. at 9.) Quarless's argument is essentially that BBG changed its opinion of Curtis's qualifications in an effort to obfuscate its retaliatory motivation. (Oral Arg. Tr. at 34.) However, at deposition, Cabiness explained that in 2007, Curtis would not have brought any "new skills to the table," but, in 2010, Curtis was fully competent to run the security department because there was nothing new in the department with which Curtis was not familiar. (Cabiness Dep. at 252-53.) In addition, it is undisputed that BBG did not hire a new Director of Security and that Curtis in fact assumed many of Quarless's duties. (Pl. R. 56.1 ¶ 21-22.) This supposed change in BBG's opinion of Curtis's qualifications carries no persuasive value.

had produced enough evidence to shift the burden back to the plaintiff. Louis v. Brooklyn Botanic Garden, No. 10-CV-5406(JG)(LB), 2011 WL 3857127 at *7 (E.D.N.Y. Sept. 1, 2011).[6]

In addition to questioning the documentary evidence that the defendants have submitted, Quarless expresses skepticism as to the process that was used to select him for termination, arguing that there is no way to verify when or why he was added to the list of employees to be terminated. (Pl. Mem. at 9; Oral Arg. Tr. at 21.) It is true that the defendants cannot point to a specific individual who made the decision to terminate Quarless (Gasparini Dep. at 15-16), however, deposition testimony clearly indicates that the selection process involved Medbury and the other vice presidents. (Gasparini Dep. at 10; Medbury Dep. at 24.) The criteria that were used to select employees for termination were also clearly established through deposition testimony. Cabiness, Gasparini, and Medbury have all stated that the vice presidents targeted positions where other employees could assume the responsibilities of the positions that were eliminated. (Cabiness Aff. ¶ 10; Gasparini Dep. at 10; Medbury Dep. at 23-24.) These statements are entirely consistent with the circumstances of Quarless's termination and how BBG filled Quarless's position after terminating him. (Pl. R. 56.1 ¶¶ 21-22.)

At this stage of the burden-shifting test the presumption of retaliation has dissipated and Quarless bears the burden of demonstrating that retaliation was a cause of the adverse employment action.[7] Drawing all inferences in favor of Quarless, this Court concludes that at best the evidence indicates that BBG did not have a formal, static reduction in force plan that was generated solely by a comprehensive cost-saving formula, but rather utilized a more informal process that targeted middle management and weighed a variety of criteria including

---

[6] On appeal, the Second Circuit affirmed the lower court's decision, reasoning that BBG's "deteriorating financial condition" constituted a legitimate nondiscriminatory reason to terminate an employee. See Louis v. Brooklyn Botanic Garden, 487 F. App'x. 603 (2d Cir. 2012).

[7] Under Title VII, retaliation must be a "but for" cause of the termination. As discussed above, in § 1981 cases it is unclear if retaliation must be a "but for" cause or only a "motivating factor."

18

salary, the amount of severance, the amount of vacation time, and other benefits that BBG could save by a position's elimination. (See Gasparini Dep. at 10.)[8] Although the plaintiff would like the defendants to have gone through a formal process to select employees for termination, the law does not require such a process. An informal process, without more, is not evidence that the plan was a pretext for discrimination. See Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d 378, 396 (S.D.N.Y. 2012) ("Plaintiff's complaints about the lack of "formal" [reduction in force] plans and Alcott's role as the sole decision-maker for the terminations in the New York Secretarial Services department are no more than disagreements with Defendant's process for planning the [reduction in force] and provide no evidence of discriminatory intent or pretext.").

Accordingly, this Court grants BBG's motion for summary judgment as to plaintiff's federal retaliation claims.

## C. NYSHRL and NYCHRL Retaliation Claims

Retaliation claims under the NYSHRL, like Title VII and § 1981 claims, are decided under the McDonnell Douglas burden shifting framework. Wilcox v. Cornell Univ., --- F. Supp. 2d ---, 2013 WL 6027922, at *4 (S.D.N.Y. 2013) (citing E.E.O.C. v. Bloomberg L.P., 967 F. Supp. 2d 816, 834 (S.D.N.Y. 2013)). Under the NYCHRL, a plaintiff "'must show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" Id. (quoting Mihalik v. Credit Abricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013)). Under the NYCHRL, "summary judgment is appropriate only if the plaintiff cannot show that

---

[8] At oral argument, Quarless raised another argument which was not briefed. He argued that his treatment after he was terminated from BBG indicates a retaliatory motive. (Oral Arg. Tr. at 10.) However, when asked by this Court whether Quarless's treatment after being terminated indicated that he was not terminated according to a reduction in force plan, Quarless's attorney responded, "Not the way that they treated him, the ever shifting answers to when he was thought about . . . ." (Oral Arg. Tr. at 11.) Thus, this argument also fails to demonstrate a material issue of fact.

retaliation played any part in the employer's decision." Mihalik, 715 F.3d at 116 (citing Melman v. Montefiore Med. Ctr., 946 N.Y.S. 2d 27, 30-31 (N.Y. App. Div. 2012)). Both the NYSHRL and NYCHRL require a plaintiff to demonstrate some evidence that "'link[s] her complained-of [treatment] to a retaliatory motivation.'" Wilcox, 2013 WL 6027922, at *4 (quoting Williams v. N.Y. City Hous. Auth., 872 N.Y.S.2d 27, 35 (N.Y. App. Div. 2009)).

For the reasons stated above, Quarless failed to demonstrate the necessary connection between his termination and defendants' alleged retaliatory motivation. Defendants provided a non-retaliatory reason for Quarless's termination by presenting evidence that Quarless was terminated as a result of financial difficulties at BBG and because his position fit the criteria used to determine which positions could be eliminated. Quarless's attempts to demonstrate a retaliatory motive by relying on the temporal proximity between his termination and his protected activity, as well as trying to call defendants' legitimate rationale into question fail to raise a genuine issue of material fact as to whether defendants' alleged retaliatory motivation was a but for, or even a motivating factor, in the decision to terminate his employment.

Accordingly, this Court grants BBG's motion for summary judgment as to plaintiff's state law retaliation claims.

## CONCLUSION

For the reasons stated, this Court grants defendants' motion for summary judgment on Quarless's Title VII, § 1981, and state law retaliation claims. The Clerk of Court is directed to terminate all pending motions, enter judgment accordingly, and close the case.

SO ORDERED.

Dated: Brooklyn, New York
June 18, 2014

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge